UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN ALTER, by and through his brother and guardian ad litem, MARK ALTER,<br><br>                                   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO and DOES 1-10,<br><br>                                   Defendant. | Case No.:  21-cv-01709-LL-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 13]** |

Pending before the Court is Defendant County of San Diego's ("County") Motion to Dismiss Plaintiff Alan Alter's ("Alter") Complaint. ECF No. 13. The Motion has been fully briefed and is suitable for submission without oral argument. For the reasons set forth below, the Motion is **DENIED**.

## I.   BACKGROUND

### a.  Procedural History

On September 30, 2021, Plaintiff filed a Complaint against the County of San Diego alleging two causes of action. ECF No. 1. The first cause of action is "Municipal Liability

– Unlawful Policies and Practices (42 U.S.C § 1983)" and the second cause of action is "Professional Negligence." *Id.* On October 25, 2021, the Honorable Gonzalo P. Curiel granted Plaintiff's Ex Parte Petition for Appointment of a Guardian Ad Litem for Plaintiff in this action. ECF No. 6. Plaintiff's brother, Mark Alter, was appointed to serve as his guardian ad litem in this action. *Id.* On January 12, 2022, this case was transferred from Judge Curiel to the undersigned District Judge. ECF No. 9. On July 8, 2022, Defendant filed a Motion to Dismiss for Failure to State a Claim. ECF No. 13. On July 29, 2022, Plaintiff filed an Opposition, and on August 5, 2022, Defendant filed a Reply in support of the Motion to Dismiss. ECF Nos. 14, 15.

### b. Allegations in Plaintiff's Complaint

Plaintiff alleges that:

[He] spent approximately 20 years involuntarily confined as a 'mentally disordered offender,' also known as an 'MDO,' as a result of mistakes made by the County of San Diego, through its public defender offices. Although Alter suffers from significant mental illness, he never should have been classified for 'MDO' status. Specifically, Alter was convicted of a crime that did not qualify under the controlling statutory framework for involuntary MDO commitment. In other words, if his appointed counsel had reviewed the statutory list of qualifying offenses (and raised that with the court), Alter would have been released in early 2000 – at the conclusion of his parole. Alternatively, if one of Alter's attorneys had raised this issue at any of his MDO hearings over the ensuing eighteen years, Alter would have been released years before he was released, on January 7, 2021.

Complaint ¶ 1.

Plaintiff further alleges that:

[He] is a 71 year-old Viet Nam Veteran who has a severe mental illness that dates back to 1975 when he was discharged from the Marine Corps after serving in combat in Viet Nam. . . In 1987, Alter pleaded guilty to one count of a felony violation of Penal Code section 452, subdivision (c), which is the crime of recklessly causing a fire of structure or forest land. He was placed on probation, violated probation, and, in 1996, was sentenced to two years in state prison. With credit for time already served, he was soon eligible for parole. At the end of his prison term, Alter was erroneously committed to

Atascadero State Hospital, as a 'mentally disordered offender' (MDO")") under Penal Code section 2962. As a result, he served his parole in a locked facility, Atascadero State Hospital.

*Id.* ¶¶ 10, 11.

On January 13, 2000, a "hospital extension hearing" was held after the District Attorney filed a petition under Penal Code § 2970 to extend Plaintiff's involuntary commitment for one year past the termination of his parole. *Id.* ¶ 13. At the hearing, Plaintiff was represented by a deputy public defender employed by Defendant County. *Id.* Plaintiff alleges that the court was not informed that he was not eligible for extended involuntary commitment under the MDO statute. *Id.* Consequently, Plaintiff's commitment was extended for one year. *Id.* Thereafter, Plaintiff received annual "hospital extension hearings" from 2000-2018 on whether to extend his involuntary commitment for another year, pursuant to the MDO statute. *Id.* ¶ 14. Plaintiff alleges that "Alter's assigned public defenders[1] did not review the relevant statute, and thus were unaware that Alter's criminal offense did not make him eligible for involuntary commitment under the MDO statute," and as a result, Plaintiff spent approximately twenty years erroneously confined in a locked state hospital. *Id.*

Plaintiff alleges that it was not until 2018 that a newly-assigned alternate public defender realized that Plaintiff's criminal conviction did not make him eligible for involuntary commitment under the MDO statute. *Id.* ¶ 16. Accordingly, Plaintiff's attorney filed a motion to dismiss the 2018 MDO extension petition, which was denied on January 4, 2019. *Id.* After the Office of the Alternate Public Defender conflicted off the case, on July 19, 2019, the court appointed a criminal defense attorney in private practice to represent Plaintiff at his upcoming MDO hearing. *Id.*

---

[1] From 2000 – 2009, Alter was represented by deputy public defenders from the Office of the Public Defender. ECF No. 1 ¶ 15. Beginning in 2010, Alter was represented by attorneys from Defendant County's Office of the Alternate Public Defender. *Id.*

On October 1, 2020, Plaintiff's new attorney filed a petition for writ of habeas corpus asserting ineffective assistance of counsel by the County's attorneys. *Id.* ¶ 17. Thereafter, on November 16, 2020, the Superior Court issued an Order to Show Cause finding that the habeas petition established a prima facie case for relief because Plaintiff's conviction did not qualify for MDO status or involuntary confinement. *Id.* Instead of filing a response, on January 7, 2021, the District Attorney moved to dismiss the pending petitions for extension of Plaintiff's involuntary commitment. *Id.* After the court granted the motion, Plaintiff was released from custody. *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts pursuant to Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"When ruling on the motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Joseph v. Am. Gen. Life Ins. Co.,* 495 F. Supp. 3d 953, 958 (S.D. Cal. 2020) (citing *Lee v. L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001)), *aff'd*, No. 20-56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021), *cert. denied*, 142 S. Ct. 2711 (2022). In reviewing the plausibility of a complaint, courts "accept factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Additionally, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes,* 181 F.R.D. 629, 634 (S.D. Cal. 1998).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *DeSoto*, 957 F.2d at 658 (citation omitted).

### III.   DISCUSSION

#### A. Doe Defendants

Defendants argue that "Plaintiff's allegations involving 'Doe Defendants' do not

come anywhere near approaching the requisite specificity of pleading specific individual conduct by an identified (albeit unknown) individual." Motion at 11. Plaintiff responds that he "has no objection to the dismissal of 'DOES' from the Complaint." Oppo. at 11. Accordingly, the Doe Defendants are hereby **DISMISSED**.

### B. Plaintiff's First Cause of Action for Municipal Liability – Unlawful Policies and Practices (42 U.S.C. § 1983)

#### i. *Monell* Liability - Generally

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A government entity, like the County, cannot be held vicariously liable for the action of its employees under § 1983 unless a plaintiff can show that the entity's policy, practice, or custom was the moving force behind the constitutional violation. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). Pursuant to *Monell*, municipalities may be liable under § 1983 when: (1) "the acts in question were undertaken pursuant to official policy or custom," *Hopper v. City of Pasco*, 241 F.3d 1067, 1082 (9th Cir. 2001); (2) a municipality has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights," *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989), or (3) when a municipality's failure to train its employees "amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact," *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *City of Canton*, 489 U.S. at 388-89) (quotation marks omitted).

A custom for purposes of municipal liability is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*,

485 U.S. 112, 127 (1988) (internal quotation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

"Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

Historically, in order to plead a *Monell* claim in the Ninth Circuit, a plaintiff need only plead a "bare allegation that government officials' [unconstitutional] conduct conformed to some unidentified" policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Following *Iqbal/Twombly*, the Ninth Circuit held that *Monell* claims must also contain sufficient allegations to give fair notice to the opposing party and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

### ii.   Whether *Heck* Bars Plaintiff's *Monell* Claims

In *Heck v. Humphrey,* the Supreme Court held that when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. 477, 487 (1994). Although *Heck* involved a criminal judgment, it has been applied to civil commitment proceedings. *See, e.g., Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005); *Swinger v. Harris*, No. CV 16-05694-JS, 2016 WL 4374941, at *2 (C.D. Cal. Aug. 12, 2016).

21cv1709-LL-KSC

1    Defendant argues that Plaintiff's constitutional claim should be dismissed because
2    the claims are barred by *Heck v. Humphrey*. Motion at 17.  Specifically, Defendant argues
3    that "*Heck's* 'favorable termination rule' requires Plaintiff to 'prove' invalidation of his or
4    her conviction or civil commitment by any of the specific methods: (1) reversal on direct
5    appeal; (2) expungement by executive order; (3) declaration or invalidity by a state tribunal
6    authorized to make such a determination; or (4) issuance of a writ of habeas corpus by a
7    federal court." *Id.* at 17-18 (internal quotations omitted) (citing *Heck*, 512 U.S. at 477; *see*
8    *also Huftile*, 410 F.3d at 1139). Defendant argues that in this case, the District Attorney's
9    "agreement to dismiss the MDO proceedings in the face of an unadjudicated state – not
10   federal – habeas petition does not fit within any of the four recognized methods for
11   favorable termination under *Heck*." Motion at 18 (internal quotations omitted).

12   Plaintiff argues that *Heck* does not bar Plaintiff's *Monell* Claim because "under
13   *Thompson*, the dismissal of Plaintiff's underlying MDO case satisfied the favorable
14   termination requirement." Oppo. at 17. In *Thompson v. Clark*, the Supreme Court held:

> [] [A] plaintiff could maintain a malicious prosecution claim when, for
> example, the prosecutor abandoned the criminal case or the court dismissed
> the case without providing a reason. . . . In sum, we hold that a Fourth
> Amendment claim under § 1983 for malicious prosecution does not require
> the plaintiff to show that the criminal prosecution ended with some affirmative
> indication of innocence. A plaintiff need only show that the criminal
> prosecution ended without a conviction.

20   142 S. Ct. 1332, 1339, 1341 (2022) (internal citations omitted).

21   In this case, the Court agrees that the dismissal of Plaintiff's underlying MDO case
22   satisfies the "favorable termination" requirement. Even though the Supreme Court's
23   holding in *Thompson* involved a Fourth Amendment Claim under § 1983 for malicious
24   prosecution, the circumstances and fundamental reasoning in that case still apply here.
25   Specifically, in *Thompson*, charges against the plaintiff "were dismissed before trial
26   without any explanation by the prosecutor or judge." *Thompson*, 142 S. Ct. at 1333. The
27   court in *Thompson* reasoned that "[q]uestions concerning whether a criminal defendant was

28

wrongly charged, or whether an individual may seek redress for a wrongful prosecution, cannot reasonably depend on whether the prosecutor or court happened to explain why charges were dismissed." *Id.*

Similarly, here, the District Attorney dismissed the pending petitions for an extension of Plaintiff's involuntary commitment without explaining the basis for the decision. ECF No. 1 ¶ 17. The Court finds that this is sufficient to satisfy the "favorable termination" requirement under *Heck*. 512 U.S. at 477; *see also Thompson*, 142 S. Ct. at 1341. Accordingly, *Heck* does not bar Plaintiff's *Monell* claim, and the Court will consider the merits of this claim below.

### iii. Whether Plaintiff's Allegations Against Defendant County of San Diego Constitute State Action Under *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)

In *Polk County*, the United States Supreme Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S. at 325. However, the Supreme Court left open the possibility that "a public defender…would act under color of state law while performing certain administrative and possibly investigative functions." *Polk*, 454 U.S. at 325. "Administrative functions" may include decisions related to hiring and firing and the allocation of resources. *Id.*; *see also Miranda v. Clark Cnty.*, 319 F.3d 465, 468 (9th Cir. 2003). In *Miranda*, the Ninth Circuit held the plaintiff's complaint stated a valid claim against a public defender's office based on two alleged policies: (1) "a policy of assigning the least experienced attorneys to capital cases without providing any training"; and (2) a "policy that allocated resources to capital defendants based on whether they passed a polygraph test, providing defendants who passed the polygraph test with more experienced attorneys." 319 F.3d at 469-71. The Ninth Circuit explained that, in determining how office resources were to be spent, the public defender's office was performing an administrative role that "materially differ[ed] from the relationship inherent in a public defender's representation of an individual client." *Id.* at 469. In sum, the plaintiff in *Miranda* was able

to point to specific and concrete administrative policies by the public defender's office that allegedly caused the constitutional violations. *Id.* at 469-71.

Defendant argues that "when public defenders represent individuals for civil commitment hearings (like here), they [] do not act under color of state law." Motion at 16 (citing *Allen v. Reilly*, 2008 WL 131359, at *3 (S.D. Cal. Jan. 11, 2008) ("Attorneys appointed to represent a criminal defendant or civil committee during trial, do not generally act under color of state law because representing a client is essentially a private function…for which state office and authority are not needed."). Defendant further argues that "[r]eviewing statutes and making legal arguments are, however, at the heart of 'a lawyer's traditional functions,' and state action therefore does not attach for purposes of a Section 1983 claim." Motion at 17 (citing *Robertson v. Solomon*, 2020 WL 2322997, at *1 (N.D. Cal. May 11, 2020)).

Plaintiff acknowledges that the general rule is that 42 U.S.C. § 1983 claims against individual public defenders are not actionable under *Polk*, but argues that exceptions exist, especially where the claim is not against the individual public defender. Oppo. at 14. Plaintiff argues that here, "Plaintiff's federal claim is a *Monell* claim against the County of San Diego, for longstanding customs and practices existing in the County's public defender office that caused Plaintiff to be deprived of his due process rights at each of his MDO hearings from 2000-2017." *Id.* at 15. Plaintiff argues that the alleged "omissions of failing to ensure that attorneys read the relevant statute so that clients are not erroneously incarcerated for years; of failing to provide adequate training so that MDO clients would not be erroneously incarcerated for years; of deciding whether (or not) to provide proper training and/or supervision of MDO attorneys; of deciding whether to devote any resources at all to training and supervision of MDO attorneys, are administrative acts that can constitute 'state action.'" *Id*. at 16 (citing *Miranda*, 319 F.3d at 470-71). Plaintiff further argues that "these types of administrative functions 'materially differ from the relationship inherent in a public defender's representation of an individual client.'" Oppo. at 16 (citing *Miranda*, 319 F.3d at 469).

Defendant's argument that Plaintiff's allegations against public defenders do not constitute state action under *Polk* fails. Plaintiff has not named any individual public defenders as defendants, and the Court has dismissed the Doe Defendants as set forth above. Indeed, Plaintiff alleges a *Monell* claim against the County of San Diego for alleged "practice[s] and custom[s]" and "fail[ure] to properly train and/or supervise the attorneys." Complaint ¶¶ 7-11, 23, 28. The relevant inquiry is whether Plaintiff has adequately specified administrative practices and customs and/or training (or lack thereof) by the public defender's office that allegedly caused Plaintiff's constitutional violations. The Court will address these issues below.

### iv.   Whether Plaintiff Alleges Liability by Practice or Custom

The parties dispute whether Plaintiff's *Monell* custom and practice and failure to train claim are factually supported. Defendant argues that "Plaintiff's *Monell* claim fails based on the lack of a specific constitutional violation." Motion at 14. Defendant states that "Plaintiff relies solely on broad, general statements that would, at most, inculpate unspecified conduct by insufficiently-identified and improperly-named 'Doe' Defendants." *Id.* at 15. Defendant also argues that "looking past the issues involving the specific constitutional violation to which Plaintiff seeks to attach his *Monell* claims, his cause of action still fails" because he "fails to sufficiently allege a pattern or practice that supports his claim." Motion at 19.

Plaintiff opposes on the grounds that "the individual public defenders do not need to be named as defendants" because a "*Monell* claim is brought only against a public entity (here, the County)." Oppo. at 11. Plaintiff further opposes on the grounds that "the constitutional violations alleged are violations of Plaintiff's Fourteenth Amendment right not to be deprived of his liberty without due process of law, as clearly stated in paragraphs 26 and 29 of the Complaint." Oppo. at 12-13. Plaintiff also argues that the Complaint "describes how and when Plaintiff's due process rights were violated" including "at each of his MDO hearings from 2000-2017." Oppo. at 12-14 (citing various paragraphs from the Complaint). Plaintiff acknowledges that "proof of a single incident of unconstitutional

activity is generally insufficient to impose liability under *Monell*," but argues that Plaintiff's Complaint "alleges 18 separate incidents, by numerous County employees, over 18 years." *Id.* at 19. Finally, Plaintiff argues that the Complaint "also alleges that other public defender MDO clients have suffered similar violations under similar circumstances, including one man who was erroneously incarcerated for over 10 years for the same non-qualifying offense as Alter." *Id.* (citing Complaint ¶ 27).

As an initial matter, the Court finds that Plaintiff has adequately pled a constitutional violation including but not limited to in Paragraphs 26 and 29 of the Complaint. For example, Plaintiff alleges "[a]s a proximate result of these pervasive practices, customs, and/or policies, Plaintiff suffered repeated violation of his right to due process of law as guaranteed in the Fourteenth Amendment to the U.S. Constitution. . . . These constitutional violations caused Plaintiff to suffer loss of his liberty for approximately 20 years." Complaint ¶¶ 26, 29. Plaintiff also adequately describes the "how and when" of when these alleged constitutional violations occurred." Complaint ¶¶ 13-14, 25.

> The pervasiveness of the practice and custom described above is vividly illustrated in this case. Beginning in January, 2000, Plaintiff was scheduled for a 'hospital extension hearing' every year for 17 years. At each hearing Plaintiff was entitled to contest his continued incarceration under the MDO statute. At each hearing from 2000-2017, Plaintiff was represented by a County public defender or alternative public defender. Plaintiff is informed and believes that over 10 different County attorneys represented Plaintiff at these hearings. None of these attorneys checked the statute to determine whether Plaintiff's conviction fit within the MDO statute. Indeed, it was the pervasive practice and custom not do so.

Complaint ¶¶ 13-14, 25.

In sum, at this procedural posture, the totality of Plaintiff's allegations provides sufficient detail of the specific constitutional violations to which Plaintiff seeks to attach his *Monell* claims. The Court will next consider whether Plaintiff adequately alleged a custom, policy or practice to support his claim.

Plaintiff brings his *Monell* claim on the basis that "Defendant County of San Diego, through its public defender and alternative public defender offices had a pervasive practice

and custom of failing to ensure that [Defendant County's] attorneys who were assigned to represent MDO clients review the requisite MDO statutes . . . to determine whether their clients were eligible for involuntary commitment under the MDO law." ECF No. 1 ¶ 23. Plaintiff's allegations go beyond Alter's own experience. ECF No. 1 ¶ 27. Plaintiff alleges:

> Plaintiff is informed and believes that numerous other MDO clients went through repeated hearings over many years without their public defenders checking the MDO statute to determine whether their conviction fit within the MDO criteria. Plaintiff is informed and believes that at least one other man who was convicted of the same crime as Plaintiff (P.C. § 452(c)), was erroneously incarcerated for over 10 years under the MDO statute, specifically because his various attorneys over many years failed to check to determine whether the MDO statute applied to him. As in the instant case, this was pursuant to the practice and custom of not checking the statute prior to conducting the MDO hospital extension hearing.

*Id.* At this procedural posture, the Court finds that Plaintiff has adequately specified the customs or practices which allegedly gave rise to Plaintiff's constitutional injuries. *See Monell*, 436 U.S. at 694. The Court also dismisses Defendant's argument that Plaintiff allegations are sporadic and limited to his own experience; it is undisputed that at issue are the actions of numerous public defenders over the course of eighteen years in both Plaintiff's case and at least one other individual who was also allegedly involuntarily committed.

The Complaint also adequately describes how the alleged custom caused Alter harm. ECF No. 1 ¶¶ 23-26 ("Beginning in January, 2000, [Alter] was scheduled for a 'hospital extension hearing' every year for 17 years. . . . At each hearing from 2000-2017, [Alter] was represented by a County public defender or alternate public defender. . . . None of these attorneys checked the statute to determine whether [Alter's] conviction fit within the MDO statute. . . . As a proximate result of these pervasive practices, customs and/or policies, [Alter] suffered repeated violation of his right to due process of law as guaranteed in the Fourteenth Amendment to the U.S. Constitution. These constitutional violations caused [Alter] to suffer loss of his liberty for approximately 20 years.").

Finally, the Complaint alleges sufficient facts which demonstrate an obvious deficiency, and that the constitutional injury was likely to occur. For example, Alter explains that all that was required to prevent his involuntary commitment was for any one of the attorneys who represented him over the years to review the MDO statute. ECF No. 1 ¶¶ 23-24. Specifically, Plaintiff alleges:

> Had the attorney who represented [Alter] at his initial MDO extension hearing in January 2000 reviewed the statute, he or she would have learned that [Alter's] criminal conviction did *not* make him eligible for extended incarceration under the MDO law. Had the attorney so advised the Court, [Alter] would have been released at that time. Similarly, had any of [Alter's] subsequent attorneys reviewed the statute and informed the Court that the MDO law did *not* apply to [Alter], [he] would have been released years before January 7, 2022. The failure of numerous County attorneys who represented Plaintiff at annual "extension hearings" over 17 years, to check the statute to determine whether Plaintiff was eligible for extended incarceration under the MDO law, was the moving force and proximate cause of Plaintiff being wrongfully incarcerated for approximately 20 years.

*Id.*

In sum, the totality of Plaintiff's allegations provides sufficient detail of circumstances to "give fair notice and to enable the [County] to defend itself effectively," particularly since the information relating the policies, customs and practices of the County Defendant in preparing for MDO hearings is easily available to them. *AE ex rel. Hernandez v. Cnty. Of Tulare*, 666 F.3d at 637. The Court finds that that the Complaint adequately identifies the challenged custom, asserts why it is deficient, explains how it caused harm to Alter, and how it amounted to deliberated indifference**.** *Young v. City of Visalia*, 687 F. Supp. 2d at 1163. Accordingly, the Court **DENIES** Defendant County's Motion to Dismiss the *Monell* claim for policy, custom, or practice.

### v.   Whether Plaintiff Alter Alleges Liability by Failure to Train

A local government is liable for injury under § 1983 if it "fail[s] to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be

14

said to have been deliberately indifferent to the need.'" *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 390). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Thus, to succeed on a failure-to-train theory, a plaintiff must go further than merely "identify[ing] a custom or policy, attributable to the municipality, that caused his injury." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.

The Court finds that Plaintiff has sufficiently alleged facts to plausibly satisfy the "deliberate indifference" of their *Monell* claim. Plaintiff asserts that as a result of his attorneys' failure to review the relevant statute, he was deprived of his constitutional right to due process under the Fourteenth Amendment. ECF No. 1 ¶ 26. Plaintiff alleges a training policy that amounts to deliberate indifference because all that was required to prevent his alleged constitutional violation was for any one of his lawyers to analyze his eligibility for involuntary commitment—yet the training and supervision policies and practices of Defendant County did not instruct its attorneys to do so. *Id.* ¶ 28-29. In other words, Plaintiff alleges a continued, years-long pattern of adherence to training and supervision policies and practice that Defendant County *should have known* failed to prevent certain conduct by attorneys who represented clients in MDO hospital extension hearings. *See Connick*, 563 U.S. at 62 (explaining that a policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."). Finally, Plaintiff alleges that his constitutional injury would have been avoided had County Defendant trained its lawyers to review the relevant statutes. ECF No. 1 ¶¶ 29, 27 ("As a

proximate result of these practices, customs and/or lack of training and supervision, Plaintiff [and upon information and belief numerous other MDO clients] suffered repeated violations of [their] right to due process of law as guaranteed in the Fourteenth Amendment to the U.S. Constitution.").

In sum, Plaintiff has plausibly pled that Defendant County's need for more or different training was obvious and the inadequacy was likely to result in the violation of constitutional rights that it can reasonably be said to have been deliberately indifferent to the needs of Plaintiff and other clients like himself. *Rodriguez*, 891 F.3d at 802. Accordingly, the Court **DENIES** Defendant County's Motion to Dismiss the *Monell* claim for failure to train.

### C. Plaintiff's Second Cause of Action for Professional Negligence

Defendant argues that Plaintiff's "professional negligence" claim brought under California law fails because "Plaintiff cannot plead favorable termination" under *Heck*. Motion at 23-24. Defendant argues that "Plaintiff's allegations fall short of satisfying the Jones standard . . . Plaintiff has not – and cannot – plead termination of the MDO civil commitment proceedings 'in his favor.'" *Id.* Plaintiff opposes on the grounds that under *Thompson v. Clark*, Plaintiff has properly pled a "favorable termination." Oppo. at 22.

For the same reasons set forth above, the Court agrees that under *Thompson*, the dismissal of Plaintiff's MDO proceedings and his immediate release establish that Plaintiff obtained a "favorable termination" of his MDO proceedings. Defendant has cited no authority to the contrary and the Court is not aware of any such authority that would prevent Plaintiff's professional negligence claim to proceed at this procedural posture. Accordingly, Defendant's Motion to Dismiss Plaintiff's second claim for professional negligence is **DENIED**.

/ / /

/ / /

/ / /

/ / /

21cv1709-LL-KSC

1

## IV.   CONCLUSION

2    For the foregoing reasons, the Court hereby **DISMISSES** the Doe Defendants and

3 otherwise **DENIES** Defendant's Motion to Dismiss. Defendant shall answer the Complaint

4 no later than **<u>November 10, 2022</u>**.

5 **IT IS SO ORDERED.**

6 Dated:  October 18, 2022

7

8                                    Honorable Linda Lopez
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21cv1709-LL-KSC